Requestor: Honorable Thomas C. Jorling, Commissioner Department of Environmental Conservation 50 Wolf Road Albany, New York 12233
Written by: Robert Abrams, Attorney General
Your counsel raises the issue whether temporary conveyance by the State of approximately 50 acres of reforestation land, located in the Town of Brasher, St. Lawrence County, to the New York State Urban Development Corporation (the "UDC") to facilitate construction and operation by the State of an alcohol and substance abuse treatment correctional annex, pursuant to L 1983, ch 56, as amended (the "Prison Construction Act"), would violate provisions of Article XIV, § 3(1) of the N Y Constitution or Environmental Conservation Law, § 9-0501(1).
The subject parcel is located in a forest preserve county but, as reforestation land, is not part of the forest preserve (ECL, §§9-0101[6][c], 9-0501[1]).
Article XIV, § 3(1) of the New York Constitution applies to reforestation land, including reforestation lands within the forest preserve counties, and provides, in pertinent part, as follows:
 "1. Forest and wild life conservation are hereby declared to be policies of the state. For the purpose of carrying out such policies the legislature may appropriate moneys for the acquisition by the state of land, outside of the Adirondack and Catskill parks as now fixed by law, for the practice of forest or wild life conservation. The prohibitions of section 1 of this article [requiring that the forest preserve be forever kept as wild forest lands, and prohibiting alienation and the sale, removal and destruction of timber] shall not apply to any lands heretofore or hereafter acquired or dedicated for such purposes within the forest preserve counties but outside of the Adirondack and Catskill parks as now fixed by law, except that such lands shall not be leased, sold or exchanged, or be taken by any corporation, public or private".
This provision, by its terms establishes that reforestation is a policy of the State. The Legislature is authorized by this provision to appropriate funds to acquire land outside the Adirondack and Catskill Parks for reforestation purposes. Thus, this provision of the Constitution is a limited authorization for the Legislature to expend funds to acquire land only for reforestation purposes. Once land is acquired for reforestation, it seems clear under this provision that funds may be appropriated only for purposes consistent with reforestation.
This straight-forward reading of section 3(1) of Article XIV is consistent with the overall scheme established by Article XIV for use of land owned by the State in forest preserve counties. Land owned by the State within the Adirondack Park is forever wild (Art XIV, § 1, read in conjunction with § 3[1]). Trees may not be removed, destroyed or sold nor may the land be alienated. Land purchased outside the Park for reforestation must be used for that purpose (harvesting of trees and other consistent activities permitted) and may not be alienated (Art XIV, § 3[1]). Isolated small parcels of land in forest preserve counties but outside the Park may be (a) dedicated to reforestation purposes or (b) used for any other State purpose or may be alienated (Art XIV, § 3[2]). Thus, these provisions establish three categories of use by the State of land in forest preserve counties, each with different restrictions on use. The "forever wild" category is most restrictive, the reforestation land category is less restrictive in that reforestation activities are permitted, and the third category, applying to isolated small parcels, is least restrictive.
The record of debate of the Constitutional Convention of 1938 makes clear that Article XIV, § 3(1) is intended to prohibit alienation of reforestation lands within the forest preserve counties so as to preserve such lands forever for use for reforestation purposes (Revised Record, pp 1296-1316 and 2697-2703).
The current constitutional provision, substantially enacted in 1938, replaced a 1931 amendment requiring that the Legislature annually appropriate specific sums of money for the acquisition by the State of land outside the Adirondack and Catskill Parks for reforestation purposes (former N Y Const, Art VII, § 16). While the program required by the 1931 provision was carried out in its first year, the Legislature neglected the direction of the Constitution and appropriated a lesser sum in subsequent years (Constitutional Convention of 1938, Revised Record, p 1297). In 1938, the Constitution was amended to eliminate this ineffectual attempt to mandate appropriations by the Legislature and "in place thereof commit[ted] the State to the policy of wild life conservation and reforestation . . . [and authorized] the Legislature to appropriate moneys for the acquisition of land outside of the Adirondack and Catskill parks for the practice of forestry and wild life management" (id., p 2698). In providing that land acquired for reforestation purposes is not subject to the "forever wild" provision (Art XIV, § 1, providing that land owned by the State in the forest preserve may not be alienated nor may timber thereon be sold, removed or destroyed), while specifically providing that reforestation land in forest preserve counties may not be sold, exchanged or taken by any public or private corporation, the purpose of the 1938 amendment is clear. The purpose was to permit on reforestation land the cutting of trees and the undertaking of other activities consistent with the use of the land for forest and wild life conservation while ensuring through the no-alienation provision that the land would be forever dedicated to this purpose by the State (Constitutional Convention of 1938, Revised Record, p 1314). The question of whether to include the no-alienation provision in Article XIV, § 3(1) was fully debated and the Constitutional Convention voted to include the restrictive language in the proposed amendment (id., Revised Record, pp 1296-1316, 2697-2704).
Environmental Conservation Law, § 9-0501(1) provides, in pertinent part, as follows:
 "1. In order to provide for the acquisition of lands . . . which are adapted for reforestation and the establishment and maintenance thereon of forests for watershed protection, the production of timber and other forest products, and for recreation and kindred purposes, the department may acquire in the name of the state . . . reforestation areas which shall consist respectively of not less than five hundred acres of contiguous lands, which shall be forever devoted to the planting, growth and harvesting of such trees as shall be deemed by the commissioner best suited for the lands to be reforested . . . Plantations and other forests thereon shall be established, managed and protected under his supervision pursuant to such provisions of law as shall from time to time be established or to such rules and regulations as may be prescribed by him" (emphasis supplied).
Under this provision, once land is acquired by the State for reforestation, "it must be `forever devoted' to this purpose" (Towner vJimerson, 67 A.D.2d 817, 818 [4th Dept, 1979]).
Our review of the law indicates that notwithstanding the prohibition against alienation set forth in Article XIV, § 3(1) and the restrictions on use included in both the constitutional provision and ECL, § 9-0501(1), use of reforestation lands has been deemed permissible where the use permitted has either supported reforestation activities or has been deemed compatible with reforestation activities.
Thus, the following uses have been allowed within reforestation lands pursuant to revocable permits: radio towers in support of forest fire protection (1950 Op Atty Gen 148); one-half acre for erection of anchor structure for ski tow (1956 Op Atty Gen 171); renovation of existing structure for use as Boy Scout cabin (1942 Op Atty Gen 242); underground natural gas pipelines under provisions of law authorizing leases of reforestation land for removal of oil and gas (1936 Op Atty Gen 248).
This office has opined that lease of oil and gas rights within reforestation lands, if authorized by statute, is permissible so long as such use does not interfere with reforestation activities (1933 Op Atty Gen 373). Environmental Conservation Law, § 9-0507 authorizes the State to enter into oil and gas leases within reforestation areas provided that "such leasehold rights shall not interfere with the operation of such reforestation areas for the purposes for which they were acquired and as defined in section 3 of article XIV of the Constitution".
In addition, this office opined in 1975 Op Atty Gen 49 that the Department of Environmental Conservation's transfer of certain reforestation lands to the New York Power Authority (the "NYPA") for construction and operation by NYPA of 765kv transmission lines would not violate Article XIV, § 3(1) or ECL, § 9-0501(1).
 "if the Department first determines that such construction and operation will be compatible with the constitutionally mandated practice of forest or wild-life conservation on such reforestation lands and the Department retains jurisdiction necessary to ensure continued compatibility of such crossing with the required uses of such reforestation lands" (1975 Op Atty Gen 49, 52).
The Authority intended to use no more than 3.5 acres of reforestation land (id., p 52).
The Prison Construction Act is a comprehensive legislative scheme for the financing of State correctional facilities through the UDC. Pursuant to the Prison Construction Act, the State is authorized to transfer title to UDC of correctional facilities identified by the Legislature for financing "[n]otwithstanding any general, special, or local law" (§ 6; citations in this paragraph are to sections of the Prison Construction Act, L 1983, ch 56, as amended). The State Office of General Services (the "OGS") leases the correctional facilities from UDC and subleases the correctional facilities to the State Department of Correctional Services (the "DOCS") (§ 7). OGS is responsible for constructing the correctional facilities (§ 8[1]), and UDC has no obligation to operate or maintain the correctional facilities (§ 7[1]). Proceeds of bonds issued by UDC finance construction (§ 4[1], [3]). The State's rental payments to UDC equal the amount necessary to pay debt service on the bonds (§ 7[1]). The term of th OGS-UDC lease may not be shorter than the period for which debt service is payable on UDC bonds (§ 7[1]). At the expiration or earlier termination of the OGS-UDC lease, UDC is required to convey title to the correctional facilities to the State (§ 7[1]).
Section 5 of chapter 338 of the Laws of 1989 amends the Prison Construction Act to authorize financing of several new correctional facilities, including an alcohol and substance abuse treatment correctinal annex for approximately 200 inmates located in the Town of Brasher, St. Lawrence County, the facility which is the subject of this inquiry. In section 7 of chapter 338 of the Laws of 1989, an alcohol and substance abuse treatment correctional annex is defined as a medium security correctional facility consisting of one or more residential dormitories.
In sum, under the Prison Construction Act, the State transfers title to correctional facilities for a temporary period in order to support a financing lease between OGS and UDC. UDC is a mere conduit through which financing for the correctional facility is provided. Possession and control of the correctional facilities lie with the State, and not UDC, until the UDC bonds are retired, and title, possession and control vest in the State when the UDC bonds are retired.
It is clear that Article XIV, § 3(1) prohibits both the alienation of reforestation land in a forest preserve county and its use for purposes inconsistent with forest and wild life conservation. As indicated above, uses of reforestation land which have been deemed in support of or compatible with reforestation have involved limited human intrusion in reforestation lands to construct and maintain physical structures (e.g., radio towers, cabin, fire towers, support structures for 765kv transmission lines) which do not substantially interfere with the existing character and use of the lands.* In contrast, the correctional facility proposed to be established within reforestation lands is a major permanent physical installation which will house a permanent inmate population of 200 and accommodate DOCS personnel. It is our understanding that preliminary plans for this medium security correctional facility envision a 50-acre fenced and otherwise secured site within which various dormitory, administrative, gymnasium, laundry, commissary, program, vehicle maintenance and dining facilities will be constructed, operated and maintained. Further, a facility of this magnitude housing hundreds of people will necessitate the construction of access roads, facilities for provision of water, power, sewage disposal, garbage disposal and will cause increased motore vehicle traffic in the environs to service the facility. Clearly, the proposed correctional facility would be dramatically more intrusive than the uses previously found to be compatible with reforestation purposes in prior opinions. The prospect for substantial and permanent human and physical intrusion incompatible with reforestation purposes is inevitable.
In our view, construction and operation of this correctional facility in reforestation lands within a forest preserve county is not a compatible use and therefore is not permitted under Artilce XIV, § 3(1) of the New York Constitution and Environmental Conservation Law, §9-0501(1).
* We do not address here whether under the analysis of this opinion the uses found to support or be compatible with reforestation activities under prior opinions would be allowed today. The dramatically increased use of forest preserve counties, encouraged by better transportation systems and the growth of leisure time, must be considered in determining permissible use of this fragile and irreplaceable natural resource.